MARY LOMMEN v. MINNEAPOLIS GASLIGHT COMPANY.[1]

June 19, 1896.

Nos. 9992—(237).

**Constitution—Struck Jury.**

Laws 1895, c. 328, entitled "An act to provide for struck juries," etc., is not in conflict with the constitutional provisions that "the right of trial by jury shall remain inviolate,"[2] and that "every person * * * ought to obtain justice freely and without purchase."[3]

**Same.**

Neither is it obnoxious to the constitution as "class legislation."

Action in the district court for Hennepin county.

Defendant, at the proper time, filed with the clerk a demand for a struck jury. At the time designated by the sheriff for striking the jury, plaintiff appeared and filed with him written objections to the proceeding, on the ground that the act authorizing struck juries was unconstitutional. The sheriff, nevertheless, did strike a jury. On the first day of the term, plaintiff gave notice of a motion to quash the struck-jury proceedings, based on the fact that no venire had been issued or made returnable for the first day of the term, and also on the ground that all the proceedings were null and void, by reason of the unconstitutionality of the struck-jury law. This mo-

1 Reported in 68 N. W. 53.    2 Const. art. 1, § 4.    3 Const. art. 1, § 8.

tion was denied. A venire for the jury struck by the sheriff was then issued, returnable on the day for which the case had been set for trial, on which day at the call of the calendar, the struck jury having been called, plaintiff filed a motion to quash the venire for the reason that all proceedings had in the matter were unauthorized, null and void, and because the act providing for struck juries was unconstitutional, contrary to the letter and spirit of the constitution, contrary to public policy, and null and void. When the case was reached, the jury being called, plaintiff submitted this motion, which was denied by the court, Belden, J., and an exception was allowed. Before the jury was sworn, plaintiff moved the court to have a jury come from the county at large, and insisted upon her constitutional right to have the action tried by a jury summoned, drawn and selected in the usual manner, and objected to the trial of the action by a struck jury. The court overruled this motion, denied plaintiff's demand and overruled her objection, to which several rulings exceptions were taken. As the struck jury was about to be sworn, plaintiff again objected to the swearing of the jury, for the reason that it was not such a jury as was guarantied by the constitution. This objection was overruled, and plaintiff excepted. The struck jury was sworn, and the trial resulted in a verdict for defendant. Thereafter, on a bill of exceptions, plaintiff moved for a new trial, on the grounds: (1) Of irregularities in the proceedings of the court, by which plaintiff was prevented from having a fair trial, in that the court refused a jury trial, and denied plaintiff a trial by jury as guarantied by the constitution; and (2) for errors in law, occurring at the trial and duly excepted to, to wit, the rulings on plaintiff's motions and objections with reference to the struck jury. The motion for a new trial was denied, and judgment on the merits was entered in favor of defendant. From the judgment, plaintiff appealed. On the appeal, error in the overruling of plaintiff's different motions on the ground that the jury had not been summoned for the first day of the term was expressly waived, and a decision was invoked on the merits. Affirmed.

*Jno. W. Arctander* and *Ludwig Arctander*, for appellant.

The struck-jury law is in conflict with Const. art. 1, § 4. This guaranty does not have reference to jury trials as they existed at common law in England, or as they then existed in other states; but

means that the trial by jury, in its essential and substantial features, as it existed in the territory of Minnesota at the time of the adoption of the constitution, shall remain inviolate, and that the legislature is prohibited from enacting any novel mode of jury trial, in any substantial manner different from the jury trial as it existed in the territory at the time, and as the then laws of the territory prescribed. 3 Am. & Eng. Enc. Law, 731; Trigally v. Memphis, 6 Coldw. (Tenn.) 385; State v. McClear, 11 Nev. 39; East Kingston v. Towle, 48 N. H. 64; Pomeroy's Note to Sedgwick, St. & Const. Law (2d Ed.) 487; Copp v. Henniker, 55 N. H. 179; Norval v. Rice, 2 Wis. 22; Whallon v. Bancroft, 4 Minn. 70 (109); State v. Minnesota Thresher Mfg. Co. 40 Minn. 213, 41 N. W. 1020. Not every change in the mode of selecting or securing a jury from that then existing would be an invasion of the constitutional guaranty. Provided trial by jury is maintained in its essential, substantial, and fundamental elements, as then existing and recognized, the legislature has the right to make such changes in the mode of selecting, summoning and procuring the jury as changed conditions might in their judgment warrant. Proffatt, Jury Trial, § 84. These elements are: (1) Impartiality of the jurors; (2) number; (3) unanimity. To these may be added: (4) The right of peremptory challenge. In England, at common law, the sheriff selected the panel from the list of freeholders, he having power to summon whom he chose. This resulted frequently in packed juries. The American states from the beginning took the power of selection out of the hands of the sheriffs, and practically all, with the single exception of Missouri, ordained that the power of selecting the primary list should be vested in a board of several members. The selection from the primary lists for the term panels, from the earliest days, in practically all the states, has been made by fortuitous drawing; and the selection of the panel for the particular case is made in the same manner. Proffatt, Jury Trial, §§ 114, 127, 146, 152. To this element of chance, as essential in securing impartiality, the policy of the law in the territory at the time of framing the constitution was committed. Rev. St. 1851, c. 8, art. 1, §§ 15, 16; Id. c. 126, §§ 146, 149; Id. c. 115, §§ 1, 5, 6; Id. c. 126, §§ 151, 153, 160; Pub. St. 1858, c. 112, § 8; Rev. St. 1851, c. 126, § 160. The element of chance is eliminated by the struck-jury law. The first struck-jury law in Minnesota was Laws 1864, c. 31; nor

was such a jury known in Wisconsin while we were part of that state. The argument is not weakened by the territorial statutes providing for summoning talesmen when a jury could not be obtained from the regular panel, since this was required by the necessities of the case. Steele v. Malony, 1 Minn. 257 (347). Deprivation of the right of peremptory challenge is an essential differentiation from the constitutional jury trial. Proffatt, Jury Trial, § 155; Cooley, Const. Lim. 319. The territorial law recognized this right. Rev. St. 1851, c. 71, § 17. No right of peremptory challenge is given by the struck-jury law, or can be allowed as to the original panel, or as to talesmen called. Branch v. Dawson, 36 Minn. 193, 30 N. W. 545; Watson v. St. Paul City Ry. Co., 42 Minn. 46, 43 N. W. 904.

The act is in conflict with Const. art. 1, § 8. The act gives to the man who can purchase a struck jury more than justice. Meyer v. Berlandi, 39 Minn. 438, 40 N. W. 513; O'Brien v. Krenz, 36 Minn. 136, 30 N. W. 458. If, like the special jury at common law in England, and in New York, New Jersey and Michigan, the right to this jury was granted only when it was made to appear to the court in its sound discretion that a special and particular reason existed for resorting to it (Proffatt, Jury Trial, § 72), this constitutional objection would have less force. See 3 Blackst. Com. 349.

The act is void, as being contrary to the spirit of the constitution, contrary to public policy, and as furnishing an opportunity for corruption and oppression. The law is not less unconstitutional because of acquiescence. Perkins v. Scott, 57 N. H. 55; Bentham's Elements of the Art of Packing Juries, 26.

*A. B. Jackson*, for respondent.

Similar laws have been held constitutional. O'Brien v. Minneapolis, 22 Minn. 378; Mark v. St. Paul, M. & M. Ry. Co., 32 Minn. 208, 20 N. W. 131; Branch v. Dawson, 36 Minn. 193, 30 N. W. 545; Watson v. St. Paul City Ry. Co., 42 Minn. 46, 43 N. W. 904. The law is not open to the objection that it is class legislation. State v. Cooley, 56 Minn. 548, 58 N. W. 150; Johnson v. Chicago, M. & St. P. Ry. Co., 29 Minn. 425, 13 N. W. 673; Schimmele v. Chicago, M. & St. P. Ry., 34 Minn. 216, 25 N. W. 347; Johnson v. St. Paul & D. R. Co., 43 Minn. 222, 45 N. W. 156; Lavallee v. St. Paul, M. & M. Ry. Co., 40 Minn. 249, 41 N. W. 974. The law is not in conflict with Const. art. 1, § 8; Willard v. County Commrs., 22 Minn.

61; 3 Am. & Eng. Enc. Law, 725, and notes. See McDonald v. Achell, 6 S. & R. 240; Vierling v. Stifel Brewing Co., 15 Mo. App. 125; Conley v. Woonsocket Inst., 11 R. I. 147; Adams v. Corriston, 7 Minn. 365 (456); Gesford v. Critzer, 2 Gilm. (Ill.) 698; Beers v. Beers, 4 Conn. 535. The law is not in conflict with Const. art. 1, § 4. It was not the intention of the framers of the constitution to impose any restriction on the legislature as to the manner in which a jury should be selected and obtained. Jones v. State, 1 Ga. 610; Boon v. State, 1 Ga. 618; State v. Wilson, 48 N. H. 398; People v. Harding, 53 Mich. 49, 18 N. W. 555; Hartzell v. Commonwealth, 40 Pa. St. 462; Stokes v. People, 53 N. Y. 164; Dowling v. State, 5 S. & M. (Miss.) 682; Cregier v. Bunton, 2 Strob. (S. C.) 487; Flint River S. Co. v. Foster, 5 Ga. 194; Walter v. People, 32 N. Y. 147, 159; Commonwealth v. Dorsey, 103 Mass. 413; Warren v. Commonwealth, 37 Pa. St. 45; State v. McClear, 11 Nev. 39; Hudgins v. State, 2 Ga. 173; State v. Hoyt, 47 Conn. 518; Colt v. Eves, 12 Conn. 251; Perry v. State, 9 Wis. 21; State v. Ryan, 13 Minn. 343 (370).

At the time of adopting the constitution, the people of the territory were enjoying a guaranty of the right of trial by jury made originally by the act of congress of 1787 providing for government for the Northwest territory, confirmed by the Act of Congress of 1836, when they became inhabitants of the territory of Wisconsin, and again in 1849 when they became inhabitants of the territory of Minnesota. The people throughout the Northwest territory were familiar with struck juries, and each state carved out of this territory, after adopting a constitution which provided for the preservation of the right of trial by jury, provided for struck juries identical with our own. In 1831 the Ohio legislature passed a law similar to ours, except that the right was discretionary with the court. In 1853 this law was changed, so as to make the right absolute to either party. See St. Ohio 1841, c. 64, § 22; Swan's Rev. St. 1854, c. 62, § 30; 2 Rev. St. 1880, §§ 5185, et seq.; Sutton v. State, 9 Ohio, 133; Whitehead v. State, 10 Oh. St. 449; State v. Moore, 28 Oh. St. 595; Stewart v. State, 1 Oh. St. 66; Cleveland, P. & A. R. Co. v. Stanley, 7 Oh. St. 156; Cooke's St. Ill. 1858, p. 271; Rev. St. Mich. 1838, pt. 3, tit. 2, c. 5, § 19; Rev. St. Wis. 1849, c. 86, § 17; Rev. St. Wis. 1858, c. 120, § 82; St. Iowa 1851, c. 105, § 1776.

The framers of the constitution had in mind the trial by jury as

it existed generally, and not merely as it may have happened to be regulated by the local statute of the territory. Hartzell v. Commonwealth, 40 Pa. St. 462; East Kingston v. Towle, 48 N. H. 64; Keddie v. Moore, 2 Murphy (N. C.) 41; Thompson & Merriam, Juries, §§ 23, 24, and notes; Perry v. State, 9 Wis. 15. See Minnesota Convention Debates, 79 et seq.; Proffatt, Jury Trials, §§ 71, 75; Rev. St. 1851, c. 69, art. iv. §§ 57–60; Pub. St. 1858, c. 59, §§ 67–69; Steele v. Malony, 1 Minn. 257 (340); Dayton v. Warren, 10 Minn. 185 (233); State v. McCartey, 17 Minn. 54 (76).

*Koon, Whelan & Bennett*, in support of the constitutionality of Laws 1895, c. 328, by consent.

In the ordinance of July 13, 1787, creating the Northwest territory, it was provided (article II.) that "the inhabitants of the said territory shall always be entitled to the benefit of * * * the trial by jury." "No man shall be deprived of his liberty or property but by the judgment of his peers or the law of the land." January 11, 1805, the territory of Michigan was created, and it was provided (2 U. S. St. 309) "that the inhabitants thereof shall be entitled to and enjoy all and singular the rights, privileges and advantages granted and secured to the people of the territory of the United States, northwest of the River Ohio, by the said ordinance." April 12, 1827, the legislative council of the territory of Michigan enacted: "An act concerning grand and petit juries" (See 2 Terr. Laws [Michigan] p. 467), in which sections 16, 17 and 18 provided for struck juries. May 30, 1828, the legislative council of the territory of Michigan re-enacted the above law verbatim, with an unimportant exception. See 2 Terr. Laws pp. 658, 659, §§ 19, 20, 21. April 23, 1833, this law was re-enacted without change. See 3 Terr. Laws, pp. 1246, 1247, §§ 16, 17, 18. This law was a part of the law of the territory of Michigan at the time of the creation of the territory of Wisconsin, April 20, 1836. The territory of Wisconsin included all of what is now the State of Minnesota. The organic act of the territory of Wisconsin made the above law part of the law of the territory. 5 U. S. St. p. 15, § 12. Nor had it been repealed or altered when the territory of Minnesota was created out of the territory of Wisconsin; and, being the law of Wisconsin, it became the law of the territory of Minnesota, by the organic act of that territory.  9

U. S. St. p. 407, § 12. This law was the law of the territory of Minnesota, until September 1, 1851, when it was repealed by the general repealing act of the Revised Statutes of 1851. See Laws 1864, c. 31; G. S. 1866, c. 122; Id. c. 71, §§ 15–19; G. S. 1878, c. 71, §§ 15–19; Laws 1891, c. 84.

Laws 1895, c. 328, is not in conflict with Const. art. 1, § 4. The effect of this article is to continue unimpaired and inviolate the right of trial by jury, as it existed in the territory of Minnesota, at the time of the adoption of the constitution; and it neither adds to nor takes from that right, except that the right is, by this article, extended to all "cases in law, without regard to the amount in controversy." Schmidt v. Schmidt, 47 Minn. 451, 50 N. W. 598; State v. West, 42 Minn. 147, 43 N. W. 845; State v. Minnesota T. Mnfg. Co., 40 Minn. 213, 41 N. W. 1020; Whallon v. Bancroft, 4 Minn. 70 (109). The constitution was adopted October 13, 1857. G. S. 1894, p. cxii; Ex rel. Parker v. Smith, 3 Minn. 164 (240). The right of trial by jury, as it existed in the territory at the time of the adoption of the constitution, was such as was given by the then existing laws of the territory. These laws were the common law and the statute law then in force. The common law of England, so far as it was applicable to our situation and government, prevailed in the territory. State v. Pulle, 12 Minn. 99 (164); Pyeatt v. Powell, 10 U. S. App. 200, 2 C. C. A. 367, and 51 Fed. 551. Immemorial usage is looked to as determining the right of trial by jury under such a general clause as Const. art 1, § 4. Wiggins v. Williams, 18 South. 859; Plimpton v. Somerset, 33 Vt. 283; North Pa. Coal Co. v. Snowden, 42 Pa. 488; Norris Appeal, 64 Pa. 275; Watts v. Griffin, 6 Litt. (Ky.) 244. Under the common law a jury must consist of twelve men, who must agree in order to render a verdict. 3 Blackst. Com. 352; 1 Thompson, Trials, § 3; 24 Lawyers' Rep. 272, and note; Cruger v. Hudson River Ry. Co., 12 N. Y. 190; Work v. State, 2 Oh. St. 297; Opinion of the Justices, 41 N. H. 550. The right of trial by jury implies a right to an impartial jury. 3 Blackst. Com. 353; 2 Kent, Com. 12; 1 Thompson, Trials, 1; Diveny v. City of Elmira, 51 N. Y. 506; Melson v. Dickson, 63 Ga. 682. The jury must consist of men well qualified and lawful. These and other indispensable qualifications of a jury were required by the common law.

The essential elements of the right of trial by jury, at common law,

are the right (1) to a body of twelve men for the trial of a cause; (2) to have them each lawful, upright and well qualified; (3) to have them each disinterested and impartial; (4) to have them each not of kin to either of the parties; (5) to have them each not personally dependents of either of the parties; (6) to have them each have their homes within the jurisdictional limits of the court; (7) to have them each drawn and selected by officers free from all bias in favor of or against either party; (8) to have them duly empaneled, under the direction of a competent court; (9) to have them each sworn to render a true verdict, according to the law and evidence given them; (10) to have them each hear the parties and their evidence; (11) to have given to them, and to have them receive, the instructions of the court relative to the law involved in the trial; (12) to have them deliberate, when necessary, apart from all extraneous influences; (13) to have them return their unanimous verdict upon the issues submitted to them. Opinion of the Justices, supra. The right of trial by jury was, by article VII. of the amendments of the constitution of the United States, "preserved," and continued in its integrity and unimpaired in the territory of Minnesota; and it existed there either by common law, or by statutes which were mere enactments of existing provisions of the common law, until the time of the adoption of the state constitution, "in suits at common law, where the amount in controversy exceeded twenty dollars." Whallon v. Bancroft, supra; St. Paul & S. C. Ry. Co. v. Gardner, 19 Minn. 132. The essential elements of the right of trial by jury were enacted by the legislature of the territory as follows: (1) The right to a body of twelve men for the trial of a cause. Rev. St. 1851, c. 126, § 160; (2) the right to have them each lawful, upright and well qualified. Rev. St. 1851, c. 126, §§ 148, 159; Id. c. 115, §§ 3, 4, 14, 15; Id. c. 8, §§ 15, 16, 17; (3) the right to have them each disinterested and impartial. Rev. St. 1851, c. 126, § 148; Id. c. 115, § 15, par. 6; Id. c. 128; (4) the right to have them each have their homes within the jurisdictional limits of the court; (5) the right to have them drawn and selected by officers free from all bias in favor of or against either party. Rev. St. 1851, c. 8, art. 1, §§ 15, 16, 17; Id. c. 126, § 146; (6) the right to have them duly empaneled under the direction of a competent court; to have them each sworn to render a true verdict according to the law and evidence given them; to have them each hear the parties

and their evidence; to have given to them, and to have them receive, the instructions of the court relative to the law involved in the trial; to have them deliberate, when necessary, apart from all extraneous influences; to have them return their unanimous verdict.    Rev. St. 1851, c. 71, §§ 14–39; Id. c. 126, § 160.

But the right of trial by jury according to the course of the common law and the law granting that right must be distinguished from all rights granted by the law, and from the law itself, which enforces and regulates the enjoyment of the right of trial by jury.    The rules of procedure for enforcing and regulating the right of trial by jury, so far as they had been made statutory when the constitution was adopted, are found in Rev. St. 1851, cc. 8, 71, 115, 126 and 128.    Only those relied on by plaintiff need be considered, viz.: Rev. St. 1851, c. 8, art. 1, §§ 15, 16; Id. c. 126, §§ 146, 149, 151, 153, 155, 160; Id. c. 115, §§ 1, 5, 6.  These provisions declare:    (1) From what list the names of men required to do jury work shall be selected; (2) the number of persons to be selected yearly from the poll lists for jury service; (3) who shall select this list; (4) when they shall select this list; (5) what they shall do with the list of names selected; (6) what number of men whose names are on this list shall, at any term of the district court, be summoned before it to do jury work; (7) the citizenship of the men composing a petit or trial jury; (8) who shall select the names of the petit jury; (9) the manner of choosing the names of the men composing the petit or trial jury from the list; (10) the manner of choosing the jury of twelve.    These provisions prescribe, and were intended to prescribe, simply a mode, or method, of enforcing the right of trial by jury.    The effect of the constitutional provision, as interpreted by this court, is "to recognize," "to continue unimpaired and inviolate," the essential elements of the right, the primary rights, of trial by jury as above described, but not to "recognize," "to continue unimpaired and inviolate," the remedial rights defined in the territorial statutory provisions or rules of procedure, above referred to, for enforcing such primary rights.    Mathews v. Tripp, 12 R. I. 256; Beers v. Beers, 4 Conn. 535; Perry v. State, 9 Wis. 15; Stokes v. People, 53 N. Y. 164; Cole v. Perry, 6 Cow. 584; In re Petition of Wells, 3 Woods, 128, Fed. Cas. No. 17,386; People v. Harding, 53 Mich. 48, 18 N. W. 555; People v. Reilly, 53 Mich. 260, 18 N. W. 849; Jones v. Robbins, 8 Gray, 329; Work v. State, 2 Oh. St. 297;

People v. Powell, 87 Cal. 348, 25 Pac. 481; Thompson & Merriam, Juries, 6, note 1; Flint River S. Co. v. Roberts, 48 Am. Dec. 185, note. See Black, Const. Prohib. §§ 141, 192, 218. The argument is supported by the course of legislation since the adoption of the constitution. In important particulars provisions of Rev. St. 1851, for enforcing or securing the right of trial by jury, have been changed, added to, and in many instances done away with. Rev. St. 1851, c. 8, §§ 15, 16; G. S. 1894, § 673; G. S. 1866, c. 8, tit. 3, § 98; Laws 1877, c. 10, § 1; Laws 1878, c. 18, § 1; G. S. 1878, c. 8, § 107; Laws 1885, c. 5; G. S. 1894, § 676; G. S. 1866, c. 8, tit. 3, § 100; G. S. 1878, c. 8, § 109; G. S. 1894, §§ 5611–5620; Sp. Laws, 1885, c. 294, § 1; Sp. Laws 1887, c. 97, § 1; 2 G. S. 1878, c. 71, § 14a; Sp. Laws 1889, c. 137, § 1; G. S. 1894, §§ 5621–5633; Rev. St. 1851, c. 126, § 146; G. S. 1894, § 5597; G. S. 1866, c. 71, § 1; G. S. 1878, c. 71, § 1; Rev. St. 1851, c. 126, § 160; Id., c. 115, §§ 1, 5, 6; G. S. 1894, § 561; Sp. Laws 1885, c. 294, § 4; 2 G. S. 1878, c. 71, § 14d.

Laws 1895, c. 328, does not contravene any of the essential elements of the right of trial by jury. The provision that each party shall strike alternately until each has struck 12, creates an element of fortuity, is an aid in securing impartiality, and takes the place of a right of peremptory challenge. Branch v. Dawson, 36 Minn. 193, 30 N. W. 545; Blanchard v. Brown, 1 Wall., Jr., 309, Fed. Cas. No. 1,507; Watson v. St. P. City Ry. Co., 42 Minn. 46, 43 N. W. 904; May v. Hoover, 112 Ind. 455, 14 N. E. 472. Immemorial usage and the rules of the common law provided for empaneling a struck jury, similar in character to the one provided by this act. 3 Blackst. Com. 358; Anonymous, 1 Salk. 405; Sparrow v. Turner, 2 Wils. 366; King v. Perry, 5 Term R. 453. The legislature may regulate the manner of trial by jury, or may prescribe new modes by reasonable regulations. Curtis v. Gill, 34 Conn. 54; Richards v. Hintrager, 45 Iowa, 253; Garrison v. Hollins, 2 Lea, 684; People v. Hoffman, 3 Mich. 248; Randall v. Kehlor, 60 Me. 37; Foster v. Morse, 132 Mass. 354; Dortic v. Lockwood, 61 Ga. 293; Mathews v. Tripp, supra; Beers v. Beers, supra. The constitutionality of laws in this state was never questioned. O'Brien v. City of Minneapolis, 22 Minn. 378; Mark v. St. P., M. & M. Ry. Co., 32 Minn. 208, 20 N. W. 131; Branch v. Dawson, supra; Watson v. St. P. City Ry. Co., supra; Bennett v. Syndicate Ins. Co., 43 Minn. 45, 44 N. W. 794. See Carson v. Smith, 5 Minn. 58 (79). Nor has

the constitutionality of similar laws in other states been questioned. 3 Williams, Rev. St. Ohio, §§ 5185, 5186; Code Ga. 1873, §§ 5124, 5125; Code Ala. 1880, § 3018; Rev. St. Ind. 1881, §§ 525-527; 2 Sanborn & B. St. Wis. § 2544; 1 Rev. St. Mo. 1879, § 2802; Vierling v. Brewing Co., 15 Mo. App. 125; 2 Rev. St. Ind. 1876, c. 4, § 3; Pierce v. State, 67 Ind. 354.

The act is not in conflict with Const. art. 1, § 8. Adams v. Corriston, 7 Minn. 365 (456); Venine v. Archibald, 3 Colo. 163; Conners v. Burlington, C. R. & N. Ry. Co., 74 Iowa, 383, 37 N. W. 966; Randall v. Kehlor, 60 Me. 44; Beers v. Beers, supra.

MITCHELL, J. The only question presented by this appeal is the constitutionality of Laws 1895, c. 328, entitled "An act to provide for struck juries," etc. This was merely a re-enactment of Laws 1864, c. 31 (G. S. 1878, c. 71, §§ 15-19), which had been repealed by Laws 1891, c. 84.

The essential provisions of the act are as follows: Whenever a struck jury is deemed necessary by either party for the trial of the issue in any action in the district court, he may file with the clerk of the court a demand in writing for such a jury; whereupon the clerk shall forthwith deliver a certified copy of such demand to the sheriff, who shall give both parties four days' notice of the time of striking the same. At the time designated, the sheriff shall attend at his office, and in the presence of the parties or their attorneys, or such of them as attend, shall select, from the number of persons qualified to act as jurors in the county, 40 such persons as he shall think most indifferent between the parties, and best qualified to try such issue; and then the party requiring such jury shall first strike off one of the names, and the opposite party another, and so on alternately until each has struck off 12. If either party shall not attend in person or by attorney, the sheriff shall strike off for him. When each party has thus struck off 12 names, the sheriff shall make a copy of the remaining 16 names, and certify the same to be the list of jurors struck for the trial of the cause, and deliver the same to the clerk of the court, who shall thereupon issue and deliver to the sheriff a venire with the names in said list annexed thereto; and thereupon the sheriff shall summon the persons named according to the command of the writ. Upon the trial of the cause, the jury

so struck shall be called as they stand on the panel, and the first 12 of them who shall appear, and are not challenged for cause or set aside by the court, shall constitute the jury, provided that, if enough do not appear for the trial of the cause, the court shall cause talesmen to be called, as in other cases. The act provides, however, that if the sheriff is interested in the cause, or is related to either of the parties, or does not stand indifferent between them, the judge may name some judicious and disinterested person to strike the jury, and perform all things required to be done in the premises by the sheriff. The jury must be struck at least six days, and the venire served at least three days, previous to the term of court at which the action is to be tried. The party demanding the struck jury is required to pay the fees for striking the same, and the mileage and per diem of the jurors, and shall not have any allowance therefor in the taxation of costs. The provisions of the act do not extend to the trial of any indictment for any offense where the defendant is entitled to two or more peremptory challenges.

The grounds upon which it is claimed that this act is unconstitutional are (1) that it is in conflict with section 4 of the bill of rights of the constitution,[4] which provides that "the right of trial by jury shall remain inviolate"; (2) that it is in conflict with the provisions of section 8 of the bill of rights, that "every person * * * ought to obtain justice freely and without purchase"; (3) that it is class legislation, and unequal in its operation, and therefore obnoxious to the spirit of the constitution; (4) that it is against public policy, contrary to the American system of jury trial, and liable to become "an engine of oppression and a vehicle for the corruption of justice."

Inasmuch as the legislature is a co-ordinate branch of the government, the courts do not sit to review or revise their legislative action; and hence, if they hold an act invalid, it must be because the legislature has failed to keep within its constitutional limits. A court has no right to declare an act invalid solely on the ground of unjust and oppressive provisions, or because it is supposed to violate the natural, social, or political rights of the citizen, unless it can be shown that such injustice is prohibited or such rights guarantied or protected by the constitution. Except where the constitution has

4 Const. art. 1.

imposed limits upon the legislative power, it must be considered as practically absolute. The courts are not the guardians of the rights of the people, except as these rights are secured by some constitutional provision which comes within the judicial cognizance. The protection against, and remedy for, unwise or oppressive legislation, within constitutional bounds, is by appeal to the justice and patriotism of the people themselves, or their legislative representatives. Neither are courts at liberty to declare an act void merely because, in their judgment, it is opposed to the spirit of the constitution. They must be able to point out the specific provision of the constitution, either expressed or clearly implied from what is expressed, which the act violates. Moreover, courts will never declare a statute invalid unless its invalidity is, in their judgment, placed beyond reasonable doubt. Cooley, Const. Lim. c. 7.

In view of these principles, which are elementary, counsel's third and fourth objections present considerations which should mainly, if not entirely, be addressed to the legislature. They involve nothing of judicial cognizance, unless it be the question whether the provisions of the act are what, in a constitutional sense, is known as "class legislation." The act, however, is not obnoxious to that objection. Its provisions apply alike to all litigants. The right to avail himself of them on the same terms is open to every one. It is true that it is not every litigant that may be financially able to avail himself of that right. That is a consideration that may go to the fairness or justice of the law, but not to its constitutionality. There are a great many laws of whose privileges many persons, because of their financial condition, are unable to avail themselves; but it was never heard that this fact alone rendered an act obnoxious to the constitution, as being class legislation.

Neither is there any merit in the point that the act is in violation of the constitutional provision that every one "ought to obtain justice freely and without purchase." This is as old as Magna Charta, and has a well-understood historical meaning. It was aimed against the corrupt practice of taking bribes and exacting illegal fees in the administration of justice, and never meant that a litigant should have the right to conduct his suit in court without cost. At common law, every suitor bought his writ, and had to pay the cost of every ministerial act done at his request as the cause proceeded.

Costs and fees imposed on suitors to defray the expenses of courts might be made so great as to be unreasonable, and to result in a practical denial of justice, and for that reason be unconstitutional. Where the limit is we need not now inquire, for the party who demands a struck jury cannot complain, for he voluntarily incurs the expense, and the opposite party has no ground for complaint, because it costs him nothing, and cannot be taxed against him as costs, even if he proves to be the losing party.

Therefore, the only remaining question is, does the act under consideration violate the provision of the constitution that "the right of trial by jury shall remain inviolate"?

What is "trial by jury" to which the constitution refers? The constitution nowhere defines it. The question is an historical one, for an answer to which reference must be had to "jury trial" as known at common law and as it existed in the territory of Minnesota at the time of the adoption of the constitution. From Whallon v. Bancroft, 4 Minn. 70 (109), down to its latest utterance on the subject, this court has always held that the effect of this clause in the constitution is—First, to recognize the right of trial by jury as it then existed in the territory; and, second, to continue such right unimpaired and inviolate. In all former cases the question was, in what cases are parties entitled to a trial by jury? And the answer has always been, in those cases in which they were entitled to jury trial by the laws of the territory at the time of the adoption of the constitution.

The question in the present case is, what is a trial by jury, within the meaning of the constitution? The expression "trial by jury" is as old as Magna Charta, and has obtained a definite historical meaning, which is well understood by all English-speaking peoples; and, for that reason, no American constitution has ever assumed to define it. We are therefore relegated to the history of the common law to ascertain its meaning.

The essential and substantive attributes or elements of jury trial are and always have been number, impartiality, and unanimity. The jury must consist of 12; they must be impartial and indifferent between the parties; and their verdict must be unanimous. It cannot be claimed that the act under consideration affects either the first or third of these essential attributes of a jury trial. If it affects

65 M.—14

any of them, it must be the second, viz. impartiality.    The mode of selecting the jury is only a means to an end, and only goes to the question of impartiality.    No court ever held or intimated that, in order to preserve the right of trial by jury "inviolate," it is necessary to continue the particular method of selecting jurors in force at the time of the adoption of the constitution.    On the contrary, it has always been held that the method of selection is entirely within the control of the legislature, provided only that the fundamental requisite of impartiality is not violated.    Perry v. State, 9 Wis. 19; Proffatt, Jury, § 106.    No case is cited, and we think none can be found, to the contrary.    Our own legislation, general and special, enacted since the adoption of the constitution, changing the mode of selecting jurors, is a witness to the correctness of this proposition; and, if the mode adopted provides for the selection of the jury with substantial fairness, a court would have no right to declare the act unconstitutional merely because, in its judgment, some other method would be better calculated to secure impartiality, at least when the mode adopted was one previously known to and recognized by law as a proper mode of selecting a jury.

The objections urged by counsel to the mode of selecting jurors provided by the struck-jury act are—First, that it eliminates the element of lot or fortuity; and, second, that it deprives the party of the right of peremptory challenge.

As already suggested, these are not essential or substantive elements of a jury trial, but merely means of securing one of those elements, viz. impartiality.    Fortuity in the selection of a jury was unknown at common law, the panel being selected by the sheriff from his list of freeholders; and it was not until 3 Geo. II.[5] that he was required to select a panel for the trial of all causes at the assizes, instead of, as previously, a separate panel for the trial of each separate case.    This mode of selection was subject to the objection that it opened the door for jury-packing by the sheriff.    Hence most of the American states have long since taken the selection of jury lists out of the hands of the sheriff, and placed it in the hands of other officers or bodies, such as the selectmen of the towns, town supervisors, county commissioners, county courts, or certain officers con-

[5] C. 25.

stituted a board for that purpose; and, as an additional means of insuring impartiality, they have introduced an element of lot in selecting from the jury lists those who should constitute the panel for the term, and, again, in selecting from this panel those who should compose the jury for the trial of a particular cause. It is likewise true that most of the American states have, as an additional means of securing impartiality, permitted a limited number of peremptory challenges in civil causes, the object of which, doubtless, was to give a party an opportunity to strike off a juror whom he suspected of prejudice, but without being able to give sufficient reasons for his exclusion for cause. The right of peremptory challenge in civil causes was unknown to the common law, and does not exist in England even at the present day. But it will be found that even under these modern statutes there is no element of fortuity in selecting the original jury list, but only in subsequent selections from that list; also, that if, by reason of challenge or otherwise, there is not a sufficient number of jurors for the trial of a cause, the court has the power to direct the sheriff to summon bystanders, or to issue to the sheriff a special venire, directing him to return an additional number of jurors from the body of the county; also, that in courts, such as justices' courts, where a jury is only wanted occasionally and at irregular intervals, it has usually been provided that the jury should be selected substantially in the manner provided in our struck-jury act, which involves no element of fortuity, and when there is no right of peremptory challenge eo nomine. This is, and at the date of the adoption of the constitution was, the mode of selecting a jury in justice's court in Minnesota. It was the mode prescribed for selecting a jury in the county court by the act under consideration in Perry v. State, supra.[6]

Special or struck juries were well known to the common law, their origin being so ancient that its date cannot be ascertained. As early as 8 Wm. III. a rule as to the manner of striking such a jury provided that if one party came, and the other did not, "he that appears shall, according to the ancient course, strike out twelve, and the master shall strike out the other twelve for him that is absent." Anonymous, 1 Salk. 405. See, also, King v. Edmonds, 4 Barn. & Ald. 471.

6 Priv. Laws 1858 (Wisconsin) c. 7.

The main object of special juries was protection against packed or incompetent common juries. Blackstone states the mode of procedure for selecting a special jury as follows: "Upon motion in court and a rule granted thereupon [the sheriff is required] to attend the prothonotary or other proper officer with his freeholders' book, and the officer is to take indifferently forty-eight of the principal freeholders, in the presence of the attorneys on both sides, who are each of them to strike off twelve, and the remaining twenty-four are returned upon the panel." 3 Bl. Comm. 357. This, it may be suggested, is the model after which all the American special or struck jury acts have been framed. Indeed, it would perhaps be more accurate to say that these statutes are merely declaratory or amendatory of the common law on the subject; and, as respects the mode of selecting a special jury, the essential feature of all of them is that a list (generally from 40 to 48) of persons qualified to serve as jurors is selected from the body of the county by some officer who is impartial between the parties, and from this list the parties alternatively strike off a name, until the list is reduced to a specified number, and the jury for the trial of the cause is taken from such of the remainder as are not challenged for cause. It will be observed that the element of lot and the right of peremptory challenge were entirely wanting at common law in the selection of a special jury. It will also be found that the same is true of all the American statutes, except that in New York and Pennsylvania it seems that, under comparatively recent statutes, a limited right of peremptory challenge is given.

We regret that time has not permitted us to make anything like a complete examination of the legislation in this country on the subject of special or struck juries. We have found nothing on the subject in the New England states, but the Middle and Southern states seem generally to have recognized special juries as an existing common-law institution, and to have commenced to regulate it by statute at an early day. Thus, in 1801, New York enacted (Laws 1801, c. 98, § 22) that "no struck jury shall be allowed unless on the order of the court when they may deem it necessary by reason of the importance or intricacy of the case," which is evidently intended to be restrictive of an existing and well-known common-law right. This statute was amended in 1829, and again in 1857, so that it now reads: "Where it appears to the court that a fair and impartial trial * * * can-

not be had without a struck jury, or that the importance or intricacy of the case requires such a jury, the court must make an order," etc. 2 Rev. St. 1829, pt. 3, c. 7, tit. 4, art. 3; 2 Bliss' Code 1890, § 1063. Delaware has had a statute providing for special juries at least since 1852 (Rev. Code 1852, c. 109, § 16); Pennsylvania, since 1785 (1 Pepper & Lewis' Dig. 2517). In the latter state, however, under what they call a common law of their own, no special venire is issued, but the jury is struck from the general venire issued for the term. McDermott v. Hoffman, 70 Pa. St. 31. In Maryland all juries seem to be, in a modified form, "struck." They select a list of 20 from the panel, and each party strikes four names from the list, and the remaining twelve constitute the jury. Code 1860, art. 50, § 7; Code 1878, art. 62, § 12. Virginia has had a statute, at least since 1849, authorizing the court, except in cases of felony, to allow a special jury; but in that state 18 out of a list or panel of 24 are chosen by lot, and the parties strike from the 18 until it is reduced to 12, who constitute the jury. Code 1849, c. 162, § 8; Code 1860, c. 162, § 25. In Georgia the statutes have provided for struck juries ever since 1799. The peculiarity in that state is that the grand jury list is taken as the list from which the parties strike off names. Acts 1869, No. 127, § 6; Code 1882, § 3925; Winter v. Muscogee R. Co., 11 Ga. 438; Walker v. Bivins, 57 Ga. 322. The statutes of Alabama have provided for struck juries at least since 1852 (Code 1852, § 2264; Code 1876, § 3018); also of Arkansas, as early as 1837 (Rev. St. 1837, c. 85, § 18); also Missouri, at least since 1872 (Wag. St. 1872, c. 80, § 23; Rev. St. 1879, § 2802).

Turning now to the states formed out of the Northwestern territory, of which Minnesota was a part, we find that, as early as 1824, Ohio passed an act providing for struck juries, which, as re-enacted in 1831 and amended in 1853, is identical with that of Minnesota. St. 1841, c. 64, § 22; Swan's Rev. St. 1854, c. 62, § 30; Rev. St. 1880, § 5185. Indiana has had statutes on the same subject at least since 1861 (Acts 1861, c. 22; 2 Gavin & H. St. Ind. 1862, pt. 2, c. 1, § 310; Laws 1881, c. 38, § 359; Rev. St. 1881, § 525; Rev. St. 1894, § 534); also Michigan, since 1827 (2 Terr. Laws, p. 471, § 16; Rev. St. 1838, pt. 3, tit. 2, c. 5, § 19; How. Ann. St. 1882, § 7585). As both Wisconsin and Minnesota were originally part of Michigan, it would seem that the struck-jury act of that state continued to be the law of Wisconsin until the latter state passed another act on the subject,

in 1889, and continued to be the law of Minnesota until the adoption of the Revised Statutes, in 1851.   Wisconsin passed a struck-jury act in 1889, which is substantially the same as that of Minnesota.   Laws 1889, c. 268 (2 Sanb. & B. Ann. St. § 2544s).

Under all of these statutes, except where we have mentioned the differences, the method of selecting the jury was, in all essential particulars, the same as under our statute, and as at common law in England.   Most, if not all, of these statutes, were enacted in the several states after the adoption of their constitutions, containing the same or similar provisions as to the right of trial by jury which are contained in the constitution of Minnesota; and yet, until in the present case, the constitutionality of these statutes has never, so far as we can discover, been even questioned, except once in Missouri, when the constitutional objections to the act were very promptly overruled.   Vierling v. Stifel Brewing Co., 15 Mo. App. 125.   The courts and the bar everywhere seem to have assumed that the constitutionality of such laws was beyond question.   This act was first passed in 1864, less than seven years after the adoption of the constitution, and remained on our statute books unchallenged for twenty-seven years.   Struck or special juries, and the present mode of selecting them, had been known to and recognized by the law, as being in accordance with the common-law right of trial by jury, for ages before the adoption of the constitution of this state.   It is rather late in the day to discover the unconstitutionality of such acts; and it would certainly require great temerity for courts now to assume to have discovered some new ground on which to hold them invalid.

But, even if the question was one of first impression, we do not see why the act does not provide a method of selection sufficient to secure substantial impartiality.   If the sheriff does not stand impartial between the parties, the judge may (shall) appoint some judicious and disinterested party to make the list; and, if a showing was made that furnished any reasonable ground for believing that the sheriff was not entirely impartial, it would be error for the court to refuse to appoint some one else to act in his stead.   Moreover, if the sheriff selected a partial or unfair list,—as, for example, largely of the personal friends or neighbors of one of the parties, or persons who, from business interests, were presumably biased in favor of one side of the issue to be tried,—we have no doubt of the power, as well as duty,

of the court to set aside the list, on motion analogous to the old motion to quash the array. If the list is honestly selected, it would seem that, under the right to strike off 12, it could be purged not only of all that could be successfully challenged for cause, but also of all even suspected of bias. But, if not, the party has at least six days after this, and before trial, in which to investigate the remainder, and his right of challenge for cause at the trial is still unlimited. Counsel has much to say about abuses that have grown up by reason of collusion between dishonest litigants and friendly or corrupt sheriffs; but, if such abuses have grown up, this is an argument to address to the legislature, rather than to the courts. All laws are subject to be abused by corrupt and dishonest men.

The most serious objection to the policy of the law (although not urged by counsel as of itself any ground for holding the law unconstitutional) is that it gives a party an absolute right to a struck jury without cause shown. But, whatever may be said of the propriety or policy of this feature of the act, we cannot see how it infringes upon the constitutional right of trial by jury, provided the act still leaves an impartial jury between the parties. If this is a valid objection to the constitutionality of the act, it would obtain against many of the struck-jury laws in other states; and yet we have not been able to discover that such an objection was ever even suggested. At common law, while an order and rule of court were required, yet the rule for a struck jury was made as of course on the motion of the party, and without any cause shown; and we do not discover that this was ever changed by statute in England, at least prior to the American Revolution. The first statute in that country on the subject of struck juries appears to have been 3 Geo. II. c. 25. That act was passed to remove a doubt that had arisen as to the power of the courts of law at Westminster on a matter not here material; but the language of the act is: "The said courts are hereby respectively authorized and required upon motion as aforesaid in any of the cases before mentioned to order and appoint a jury to be struck," etc. Section 2, c. 37, 6 Geo. II., was in the nature of a special act for the counties palatine of Chester, Lancaster, and Durham, authorizing the justices of the session or assizes in those counties, in their discretion, to order and appoint a jury to be struck. Chapter 18, 24 Geo. II., requiring a party calling a struck jury to pay the jurors' fees, as

well as the cost of striking the jury, and providing that he should not be entitled to any more costs than if the case had been tried by a common jury, was intended to prevent parties from calling struck juries unnecessarily in small and trivial cases, and indicates that a party had a right to such a jury as of course, and not merely in the discretion of the court, or upon cause shown. In this country a number of the states have by statute restricted this common-law right to a struck jury, and provided that such a jury should be allowed only in the discretion of the court or upon certain cause shown. This was, and still is, the law in New York, Michigan, and a number of other states. But in Delaware, Pennsylvania, Georgia (until 1869), Alabama, Ohio (since 1853), Indiana (at least since 1861), Missouri (since 1879), and Wisconsin (since 1889), a party is or was entitled to demand a struck jury as a matter of right without showing any cause. In Pennsylvania, in 1789, in order to prevent defendants from calling for special juries merely for delay, it was provided that, except in cases involving the title to real estate, no rule for such a jury should be entered on the defendant's application, unless he filed an affidavit that he believed that there was a just and legal defense to the plaintiff's demand. Dunl. Laws Pa. 1700–1849, c. 95.

In view of such a consensus of opinion on the part of the legislatures, and impliedly of the courts and bar, of the country, that statutes of this kind do not impair the common-law right of trial by jury as known and understood in American constitutional law, we would not be warranted in holding this act unconstitutional. With the policy of the law we have nothing to do. If conditions have so changed that it results in abuses such as counsel suggest, the remedy is with the legislature.

Judgment affirmed.

CANTY, J. (dissenting). I cannot concur in the foregoing opinion. At the time of the adoption of our constitution, no man had a right in the territory of Minnesota to resort to the one-man method of having a jury selected for him, when he showed no shadow of cause for it, and when there were plenty of presumptively fair and competent jurors in court on the regular panel. No man ever had such a right in the territory. And, further, for more than 150 years prior to the adoption of our constitution, such one-man power in the selec-

tion of juries had been almost universally discarded in all the American colonies, states, and territories east of Minnesota, through which we trace our customs and traditions. It is true, as I will hereafter show, that there were a few of these states which retained a form of struck-jury practice, under which the party might apply to the court for a jury struck, and the court, in its discretion, could grant or refuse the application. But, under the watchful discretion of the court, this was not in fact a one-man power in the selection of juries, and was not at all as likely to result in the selection of unfair juries as the absolute right of the party given by our statute to elect to have one certain man select the jury. For these reasons, I claim that, even if it is constitutional to allow such one-man power in this state at all, it is so only to the extent that it was practiced in the states aforesaid, and with as many safeguards thrown around it. I claim that, under our constitution, the party cannot be made the judge of his own cause as to when he will set aside the regular panel, and have this one-man power exercised for him; that the court, and not he, must be the judge of this, and, in its discretion, determine in each case whether or not the ends of justice will, under all the circumstances, be better subserved by allowing or denying a struck jury. But our present law attempts to vest practically the whole of this discretion in the party, and make him the judge of his own cause as to these matters. I claim that the removal of the safeguard of this watchful discretion of the judge leaves it less likely that an impartial jury will be selected, and therefore the law is unconstitutional.

The one-man power in the selection of jurors has always led to gross abuses. This is historical. But the opportunity for such abuse is much greater when the sheriff selects the jury for the particular case than when he selects a panel to try all the cases on the calendar. It is hardly necessary to cite authorities to show the evils of jury-packing which have resulted from the practice of allowing one man to select juries. "In this are pointed out two abuses, which have always weakened and undermined the integrity of the body [the jury], and against which we have had to make stringent and special provisions. These were the improper selection from the body of the people, and an unfair empaneling of those selected. * * * The English practice allowed the officer summoning a jury

a large, and, as we think, a dangerous, degree of discretion as to the selection of the persons who formed the jury. This gave rise to the very common and grievous complaint, so frequently made in English judicial proceedings, of a packed jury, which, under the system there, was possible, and the evils and dangers of which have been so forcibly pointed out by writers, especially by Bentham in his Art of Packing Juries." Proffatt, Jury, § 114. "At common law no such thing was known as the preparation of a list of persons who were liable to be summoned to serve as jurors at a succeeding term of court; but the uncontrolled discretion was vested in the sheriff, in the coroner, or in officials called 'elisors,' of summoning such 'good and lawful men' as they might choose under the command of the writ of venire facias. This led to enormous abuses, chiefly in the packing of juries and the blackmailing of citizens, to remedy which American statutes have generally provided, with more or less particularity, for the preparation, a given time before the commencement of any term of court, or at other stated periods, of a list of persons, within the county or other jurisdiction, from whom jurors are to be summoned. The preparation of this list is generally, though not always, confined to officials other than the sheriff, such as the judges of general elections, or the county canvassers of the votes polled at general elections, the trustees of the township or the councilmen of wards, other town officers, special boards, county courts, or jury commissioners." 1 Thompson, Trials, § 13.

I will not multiply authorities on this point. We have no right to assume, as the majority do, that human nature is any better now than it always has been, or that the practically unrestricted exercise of this one-man power will produce a jury up to the standard of impartiality which existed when our constitution was adopted, and when no right to exercise this one-man power existed. The millennium has not come. The experience of ages shows that this one-man power has always led to abuse. Any increase in it, or any dispensing with the safeguards which should surround it, greatly detracts from the required standard of impartiality. In one breath the majority say that one of the requirements of a constitutional jury is impartiality, and in another breath they say that a law which so far fails to secure this impartiality as to be unjust and oppressive is still constitutional. In one breath they say: "The essential and

substantive attributes or elements of jury trial are and always have been number, impartiality, and unanimity." In another breath they say: "A court has no right to declare an act invalid solely on the ground of unjust and oppressive provisions, or because it is supposed to violate the natural, social, or political rights of the citizen, unless it can be shown that such injustice is prohibited or such rights guarantied or protected by the constitution." For my part, I hope I shall never sit on a bench under such a constitution, when I have not got "temerity" enough to declare invalid a law for the selection of juries which is likely to result in "such injustice,"—which fosters the selection of juries so lacking in impartiality that the "provisions" of the law are "unjust and oppressive."

It is conceded by all parties to this case that impartiality is one of the constitutional requirements of a legal jury. In the exceedingly able brief filed on behalf of respondent by intervening counsel, the following are stated as three of the essential elements of a constitutional jury: "(2) The right to have them [the 12 men] each lawful, upright, and well qualified. (3) The right to have them each disinterested and impartial. * * * (7) The right to have them each drawn and selected by officers free from all bias in favor of or against either party." Neither can there be any doubt about the correctness of this proposition.

I also fully agree with the majority that the particular statutory machinery by which, at the date of our constitution, an impartial jury was secured, is not a part of the constitutional right to an impartial jury. It is the standard of impartiality which then existed that the constitution says shall remain inviolate, not merely the statutory machinery by which that standard was attained. It is the right to a certain grade of impartiality which the constitution preserves. What that grade is, is a historical or traditional question, not a statutory one. But the question has reference to the living customs and traditions of the people of Minnesota territory at the time the constitution was adopted, not to the dead customs and traditions of some prior time. But, to determine what that constitutional impartiality is, we can look backward over some length of time immediately prior to the date of the constitution, not solely to the statute law which existed at that date; and, by doing so, we will discover that the same

standard of impartiality had existed for a considerable length of time. Then such statutory machinery did not provide the right itself, but merely the means of regulating and enforcing that right. It never was intended by the makers of our constitution to tie the hands of the legislature to the particular statutory mode of selecting a jury in force when the constitution was adopted. But it furnishes the standard of impartiality, and the legislature is not at liberty to go back and take as such standard the crude practices of the distant past, —practices which had been long discontinued.

As to the provision of the constitution that "the right of trial by jury shall remain inviolate," the majority say at one moment that the standard of impartiality which shall remain inviolate is that which existed in the Minnesota territory; and at the next moment they go back to the border of the Dark Ages to find that standard, and utterly ignore the fact that the world has moved in the meantime. If you can go back thus far why not go back still further, to the days when the standard of impartiality was such as was attained by the practice of deciding lawsuits by wager of battle? Why not take that as the standard of impartiality which prevailed in Minnesota territory and should prevail in the state to-day? It is hardly necessary to say that the safeguards which were thrown around the selection of a jury under the laws of the territory insured a standard of impartiality very much higher than did the English common law or the English statutes up to the time of the Revolution. The Revision of 1851 of the territory of Minnesota provided that the board of county commissioners should select from the poll lists a list of 72 persons for petit jurors (chapter 8, art. 1, §§ 15, 16); that the panel should be drawn by lot from this list (chapter 126, §§ 146–149; chapter 115, § 5); that the jury should be drawn by lot from this panel (chapter 71, §§ 14, 16; chapter 126, §§ 151–161); and the parties had the right both to challenge peremptorily and for cause (chapter 71, § 17; chapter 128). There never was in the territory of Minnesota any provision for a struck jury or any one-man power in the selection of jurors, except talesmen in case of deficiency and juries in justices' courts. As we shall hereafter see, safeguards securing as high, or nearly as high, a standard of impartiality, had long been in force in those states through which we obtained our laws, customs, and tra-

ditions, and, while but few of these particular safeguards are a part of our constitutional right, the standard of impartiality thus attained is.

The majority dwell much on the statutes passed during the time of Geo. II., and the practice in England both before and after. But they fail to tell us that long prior to the time of Geo. II. the odious one-man power in the selection of juries had been abolished in most of the American colonies through which we trace our traditions. As early as 1692, the colony of Massachusetts Bay provided that the freeholders of each town should select the number of petit jurors apportioned by the clerk of the court to such town. 1 Acts & Resolves 1692–1714, p. 74, § 11. A similar provision was enacted in 1697 (Id. p. 286, § 10); and again in 1699 (Id. p. 368, § 4). As early as 1736 the panel of jurors was drawn by lot from lists similarly prepared by the selectmen of the town. 2 Acts & Resolves 1715–41, p. 828, c. 10. See, also, Id. p. 1090, c. 18; 3 Acts & Resolves 1742–56, p. 474, c. 5; Id. p. 995, c. 13; 4 Acts & Resolves 1757–68, p. 318, c. 29. See, also, 4 Laws of Mass. 1807–1816, p. 41; Rev. St. 1836, c. 95. The statutes of Vermont have always been similar. R. L. 1808, c. 6, § 58; R. L. 1824, c. 7, § 58; Rev. St. 1840, c. 13, §§ 71, 72; c. 32, §§ 2–6. So have the statutes of New Hampshire. Act June 17, 1785, found in Rev. Laws 1815, p. 121, §§ 1, 2; Rev. Laws 1830, tit. 100, §§ 1–5; Rev. St. 1842, c. 176, §§ 1–17. So have the statutes of Connecticut. Act Oct. 1744, found in Rev. Laws 1808, p. 426, §§ 1–5; Rev. Laws 1838, p. 51, §§ 36–40; Rev. St. 1849, tit. 1, c. 9, §§ 105–110. So, also, have the statutes of Rhode Island. Act of 1729, found in Pub. Laws 1798, p. 180, §§ 1–13; Rev. Laws, 1822, p. 136, §§ 1–14; Pub. Laws 1844, p. 154, §§ 1–10. And the statutes of Maine have always been similar. 1 Rev. Laws 1821, c. 84; Rev. Laws 1830, c. 84. So far as I can ascertain, there never has been in all New England, since the earliest settlements, anything resembling a struck jury or any one-man power in the selection of any jury, except in the selection of talesmen in case of deficiency.

We come now to states where the statutes provided for struck juries. But it will be observed that in none of these states, up to the time our constitution was adopted, could a struck jury be had as a matter of right, or without submitting the request for it to the watchful discretion of the judge; and in every instance the right to an impartial jury was much better guarded by the practice prescribed, and such

practice was much less liable to abuse, and much more likely to attain impartiality, than the present struck-jury law of this state. In 1786 the legislature of New York enacted: "That it shall and may be lawful for the supreme court and the several inferior courts * * * upon motion * * * in any action * * * to order and appoint a jury to be struck for the trial thereof." 1 Greenleaf, Laws N. Y. p. 268, § 19. In 1801 the legislature of New York provided for the selection by the town supervisors and city assessors of jury lists (1 Laws 1801, c. 98, § 13); the drawing of the regular panel by lot from such list (section 11); and the drawing by lot of the jury from such panel (section 20). This statute also provided (section 22): "That no struck jury shall be allowed unless on the order of the court, when they shall deem it necessary by reason of the importance or intricacy of the case, and whenever they shall so deem it necessary" they may order such jury. See, also, 1 St. 1813, p. 333, § 22. 2 Rev. St. 1829, pt. 3, c. 7, tit. 4, art. 3, § 46, provides: "When it shall appear to the supreme court or to any court of common pleas * * * that a fair and impartial jury will be more likely to be obtained by having a struck jury, or that the importance or intricacy of the cause requires such a jury, such court shall order a special jury to be struck for the trial of such cause." The statute is still in the same form. 1 Stovers' Code, N. Y. 1892, § 1063. Under these statutes, the New York courts have scrutinized very closely applications for struck juries, and have ordered them only in very exceptional cases: See Livingston v. Columbian Ins. Co., 2 Caines, 28; Manhattan Co. v. Lydic, Id. 380; Foot v. Croswell, 1 Caines, 498; Anonymous, 1 Johns. 314; Wright v. Columbian Ins. Co., 2 Johns. 211; Genet v. Mitchell, 4 Johns. 186; Poucher v. Livingston, 2 Wend. 296. In every one of these cases the court denied the application for a struck jury. Section 19 of the "Fundamental Constitutions" of the province of East New Jersey, passed in 1683, provides: "The manner of returning juries shall be thus: The names of all the freemen above five and twenty years of age, within the district or borough out of which the jury is to be returned, shall be written on equal pieces of parchment and put into a box, and then the number of the jury shall be drawn out by a child under ten years of age." See page 163, N. J. Grants, Concessions, etc., by Leaming & Spicer. In 1797 it was enacted: "That it shall and may be lawful for the supreme court, the courts of

common pleas and the courts of general quarter-sessions of the peace respectively on motion   *   *   *   to order a jury to be struck." And, when the jury was ordered, the judge himself selected the names from the sheriff's list of all the qualified jurors in the county.  R. L. 1821, p. 313, §§ 14, 15.  See, also, Elmer's Dig. 1838, p. 268, §§ 14, 15.  As stated by the majority, Pennsylvania, since 1785, has had a struck-jury law which provides that the names shall be chosen by lot from the general venire, or, as it is expressed in the statute, "from the proper wheel."  Surely, there is no one-man power in this.  In 1824 the legislature of Ohio enacted: "That it shall and may be lawful for the supreme court and courts of common pleas respectively on motion   *   *   *   to order a jury to be struck."  Rev. Laws 1824, p. 99, § 19.  See, also, Rev. Laws 1831, p. 99, § 21; St. 1841, c. 64.  This statute was enacted in Michigan in 1827.  2 Terr. Laws Mich. p. 471, § 16;  Id. p. 658, § 19;  3 Terr. Laws Mich. p. 1246, § 16.  No struck-jury law was enacted in Wisconsin or Minnesota until after the adoption of our constitution.

I have now examined substantially all the statutes of all the states through which we trace our customs and traditions, from early colonial times up to a later time than the period during which we trace such customs and traditions; and, since the early periods of colonial history, I find practically nothing which permits the exercise of any such one-man power in the selection of juries as is permitted by our present struck-jury law.  The territory of Michigan was organized, Wisconsin was carved off of Michigan, and Minnesota off of Wisconsin, before 1851, when Ohio changed her struck-jury law so as to give the party an absolute right to resort to one-man power in the selection of a jury; and no struck-jury law was passed in Indiana until 1861.  Of all the states east of us through which we trace our customs and traditions, only New York, New Jersey, Ohio, and Michigan had a struck-jury law which permitted anything which had any semblance to one-man power in the selection of the jury.  None of these laws allowed a struck jury as a matter of right. It was allowed only when the court or judge ordered it.  This certainly had a great tendency to curb the abuses which would otherwise arise from the exercise of the one-man power in selecting the jury.  In fact, it could hardly be called a one-man power at all under such circumstances.  The judge would scrutinize closely the motives

of the party applying for the struck jury, and deny the application if he had the least suspicion that the sheriff would not be perfectly fair in the selection of the jury. But under our statute a struck jury is a matter of right, and the one-man power in the selection of it practically absolute. There is no way of curbing the abuses which may arise, until they become so gross that the opposing party can successfully impeach the sheriff by an affirmative showing that he is not indifferent; mere suspicion is not enough.

Under the statutes of such other states above referred to, if an application to the court for a struck jury was opposed, it would hardly be granted as of course. The party applying for it would, at least, have to throw some suspicion on the regular panel, or on the intelligence, fairness, or impartiality of a considerable number of the regular jurors. But, conceding that he would not, the court would hardly grant the application if the least suspicion was thrown by the opposing party on the fairness or impartiality of the sheriff. As long as the presumption remained that the regular jurors were fair and impartial, no judge would require more than a suspicion to be thrown on the motives of the party applying for the struck jury, or on the impartiality of the sheriff. But now the motives of such party cannot be inquired into at all, and nothing but the strongest evidence will impeach the sheriff. The difference is neither slight nor fanciful, but the infringement on the right to an impartial jury is substantial. The change in the struck-jury law not only gives the moving party a struck jury as a matter of right, and without regard to the question of necessity or propriety, but it also shifts onto the opposing party the burden of showing the unfairness of the sheriff, or at least greatly increases such burden. If, for illustration, a statute gave the right to challenge a juror peremptorily, who would say that the party was not prejudiced by the denial of that right, as long as he still had the right to challenge for cause? Certainly no one. And yet in that case the party would have the right to examine the juror under oath as to his bias, and also to subpœna and produce other witnesses to prove that bias. But, when the sheriff is challenged for cause in such a case as this, he cannot be examined on oath, nor can any witnesses be subpœnaed and sworn to prove his bias, so as to have the court designate some one else to select the struck jury. The statute has changed the burden of proof

as to facts, and under circumstances which make it exceedingly difficult for the opposing party to sustain that burden. The slightest innovation which increases the one-man power in the selection of juries, or puts that power beyond the absolute control of the court, should be held unconstitutional. But, as I have shown, the innovation here in question is not slight. Indeed, it is a notorious fact that the putting of the selection of struck juries practically beyond the control of the court too often results in a favored litigant selecting his own jury. The litigant who happens to own the sheriff has a special privilege, which I contend it is unconstitutional to give him. The most un-American custom that can be found in the most un-American state in the union is not, as the majority hold, the measure of our constitutional rights.

The question is not, as the majority seem to argue, whether you would sometimes or in some cases get as impartial a jury, or in fact the same jury, as you would if the court had a veto power on the demand for a struck jury, but whether you would at all times and under all circumstances be as likely to get as impartial a jury; and the majority do not pretend to say that you would. When a party has considerable litigation in the same court, and makes a practice of demanding struck juries, the judge presiding at the trials has the best opportunity in the world for observing whether such juries are being selected with the strictest impartiality; and no upright judge who had the power to deny a struck jury would allow it after he once commenced to suspect that the sheriff or some obscure deputy on whom such work was imposed was the mere tool of the party applying for such struck juries. Again, the sheriff would not be at all as likely to abuse his powers and select unfair juries when he knew he was being watched by a judge who could and would promptly deprive him of those powers if he did not act with strict impartiality. While admitting that the test of the constitutional right of trial by jury is the character of that right as enjoyed and practiced in the territory at the date of our constitution, yet the majority persist in making the mistake of going back to the English common law to determine the right which was so enjoyed and practiced in Minnesota territory. This is not a question of common law, but a question of what actually existed at a particular time. All the authorities agree on that point. But, even if it were

65 M.—15

a question of common law, it would be such common law as we had adopted and up to that time retained, not such as we had long prior thereto discarded. The common law is progressive, and this is especially true of it in its transition from England to America. In both countries statutes have often wiped out portions of the common law, which the repeal of those statutes long afterwards would never revive. See Bouvier, Law Dict. tit. "Common Law."

Neither can I agree with the majority that the right of challenge or something equivalent, which will produce a jury of as high standard of impartiality, is not a constitutional right. It is also, in a greater or less degree, an ancient right. Proff. Jury, § 147. But I do not think that this question is controlling on this case, as the opportunity to strike 12 jurors from the list might be a sufficient equivalent for the right of peremptory challenge, if there were other sufficient safeguards to maintain in other respects the required grade or standard of impartiality, which, in my opinion, there are not.

The fact is also noted by the majority that a one-man power has always been exercised in the selection of talesmen. That proves nothing. Neither the litigant nor the sheriff can ordinarily anticipate such a contingency in advance, so as to be prepared to take advantage of it; and no such litigant would attempt to procure the nomination and election of a sheriff, or charter him after he was elected, in anticipation of any such contingency. Besides, the practice adopted in the selection of talesmen is a matter of necessity, which is not true as to the practice adopted in the selection of struck juries.

Again, we are told that struck juries have always been selected in justice's court in a similar manner. That proves nothing. It is held under most constitutions that there is no right of trial by jury at all in the petty cases of which a justice has jurisdiction. Proff. Jury, § 99. Then, it is certainly competent to try such cases with a kind of jury which would not be in all respects a constitutional jury in the district court, if for no other reason, because it has always been so. The right of appeal is a most effectual remedy for abuse of the one-man power in the selection of a jury in justice's court.

For the reasons stated, I am of the opinion that our present struck-jury law is unconstitutional. The legislature have a perfect right to raise the grade of impartiality higher than it ever has been,—

higher than it was either at the date of our constitution or at any time since. But they have no right to lower that grade below what it was when the constitution was adopted, by increasing the influence of either party in the selection of the jury. There is much room for the improvement of our jury system, but, under the guise of such improvement, it is not constitutional to open the door for giving a party the opportunity to select his own jury. It is undoubtedly true that many corporations are being plundered by the unjust verdicts of prejudiced juries,—juries blind even to the fact that the unjust tax thus imposed is, in turn, levied by these corporations on the general public, who, in the end, have to pay for most of this plundering. It cannot be questioned that there is a crying need for reform in the jury system, but it does not follow from this that these corporations should in their own cases be permitted to name the persons who should sit as jurors. In my opinion, the judgment appealed from should be reversed.

COLLINS, J. (dissenting). As stated in the majority opinion, the effect of that clause of our constitution which provides that "the right of trial by jury shall remain inviolate" is to recognize the right of trial by jury as it then existed, and to continue such right unimpaired and inviolate. It seems to be clear that the right to a struck jury never existed in the territory, and from the statutes of other states and territories from which we derive our traditions and customs concerning juries and the right of trial thereby, cited in the dissenting opinion, that only a qualified right to a struck jury ever existed in traditions of the territory. In any event, it did not exist absolutely. Possibly the qualified right to a struck jury was in existence where a showing was made to the court and an order obtained for the empaneling of such a jury. But in these cases the selection of the jury was more or less under the supervision of the court itself. In either case, if this was the situation when our constitution was adopted, I think it evident that the right of trial by jury as it existed in territorial days has been encroached upon and impaired by the 1895 statute, which grants to any litigant who has the money and the disposition the unqualified right to have his cause submitted to a specially selected jury.

Nor am I willing to admit that this statute is not obnoxious to section 8 of the bill of rights. This clause does not guaranty to the citizen the right to litigate without expense, but simply protects him from the imposition of such terms as unreasonably and injuriously interfere with his right to a remedy in the law, or impede the due administration of justice. Under the law in question, A., having an action against B., may deem it necessary to have a struck jury, and having the money with which to pay the expense, which may amount to a large sum, can obtain such a jury. But he is compelled to pay for it, in order that there may be a due administration of justice. He thus secures an extraordinary privilege, and is not obliged to rely for justice on a selection of the jury from the regular panel. Now, let us suppose that A. is satisfied with the regular panel, but that B. deems it necessary to have a struck jury, and is without money with which to meet the expense. Is he not denied that which his wealthy opponent is privileged to purchase? Can he obtain justice freely and without purchase, completely and without delay, when he is deprived of a specially selected and presumably specially qualified jury, which his adversary may deem it necessary to have, and may be able to obtain? Of course, these remarks are made with reference to my views as to the conditions existing when our fundamental law was adopted. Although the constitutional provision is as ancient as Magna Charta, its scope and meaning have changed, and kept pace with our institutions. The imposition of terms and costs of litigation, which were formerly, and are now, regarded in England as not opposed to this provision, would not be tolerated for a moment under our traditions and customs.

The enormous amount of business now before the court prevents further elaboration upon this feature of the case, and I drop it here, confident that it is not wholly without merit. I concur in the conclusion reached by Mr. Justice CANTY.