JAMES A. FARRELL v. W. A. HICKEN and Another.[1]

May 15, 1914.

Nos. 18,567—(106).

**Charter of Duluth — preferential ballot — right to vote.**
1. The charter of the city of Duluth adopted by the electors December 3, 1912, provides for a preferential ballot, with the right of the voter to indicate first, second and additional choices. It contains the provision that no vote shall be counted on the election of commissioners, unless the voter marks as many first choices as there are commissioners to be elected. This provision is not in conflict with the section of the state Constitution which gives to every male person belonging to certain classes the right to vote "for all officers that now are, or hereafter may be, elective by the 'people."

**Same — right to vote for others than nominees.**
2. The Duluth charter does not abrogate the provision of the general election law, which confers upon the voter the right to vote for persons other than the regularly nominated candidates whose names are printed thereon.

James A. Farrell served and filed notices of appeal to the district court for St. Louis county from the decision of the Common Council of the city of Duluth, acting as a canvassing board of votes cast at

[1] Reported in 147 N. W. 815.

the general municipal election held on April 1, 1913, for the election of mayor and four commissioners of that city, whereby the board certified Roderick Murchison received a total of first choice, second choice and third choice votes aggregating 2,877, for the office of commissioner for the term of two years, and that W. A. Hicken received a total of first choice, second choice and third choice votes aggregating 2,858, for the office of commissioner for that term, and that appellant Farrell received a total of first choice, second choice and third choice votes aggregating 2,814 for the same office, and declared Murchison and Hicken were elected.

The appeal was heard by Cant, J., who made findings and ordered judgment in favor of the contestees Murchison and Hicken. From the judgment entered pursuant to the order for judgment, contestant Farrell appealed. Affirmed.

*Baldwin & Baldwin,* for contestant.

*Crassweller, Crassweller & Blu* and *James A. Hanks,* for contestees.

HALLAM, J.

At an election in Duluth on April 1, 1913, contestees Hicken and Murchison were each declared elected to the office of commissioner for the term of two years. Contestant Farrell instituted this contest. The trial court decided against him and he appealed.

This election was the first under the "commission" charter adopted December 3, 1912. Under this charter the legislative and executive authority of the city is vested in a mayor and four commissioners. The term of office of each commissioner is four years, except that at the first election two of the commissioners were to be elected for two years, the other two for four years. All elections are nonpartisan. There is no primary election. Nominations are made by petition of at least 50 electors. The names of candidates so nominated are all placed upon the official ballot at the election. On the ballot used at this election the candidates for commissioners for the long term and those for the short term were separately classified and separately voted for, the instruction being in each case to "vote two." Where candidates are as numerous as they were in this case, three columns

are placed upon the ballot, in which the voter is to indicate his choice as follows:

|  | First Choice | Second Choice | Additional Choices |
| --- | --- | --- | --- |
|  |  |  |  |
|  |  |  |  |

The right of the voter is to cast as many first choice votes as there are offices to be filled, a like number of second choice votes, and third choice votes without limit as to number. First choice votes are counted first. If any candidate receives a majority of these he is elected. If not, then the second choice votes are counted. Then if a candidate receives a majority of first and second choice votes, taken together, he is elected. If not, then first, second, and additional choice votes are all counted together, all having equal value, and the highest vote elects. In this case no candidate received a majority of first choice votes or first and second choice votes together. It accordingly became necessary to count the additional choice votes.

The charter contains these provisions:

"No votes shall be counted on the election of commissioners unless the voters mark as many first choices as there are commissioners to be elected." Section 41.

"All ballots shall be void which do not contain first choice votes for as many candidates for commissioners as there are commissioners to be elected." Section 44.

A number of voters did not comply with these provisions, but, on the contrary, cast only single first choice votes for commissioners. The canvassing board and the trial court in counting the votes for commissioners followed the charter and rejected all such ballots. Had they counted the votes so rejected, contestant Farrell would have been elected, and contestee Hicken would have been defeated.

1. The contention of the contestant is, that the provision of the charter which requires that the voter must mark as many first choice votes for commissioner as there are commissioners to be elected in

order to have his vote counted, is in conflict with article 7, section 1, of the state Constitution, and is unconstitutional and void. This section of the Constitution reads as follows:

"Every male person of the age of twenty-one years or upwards, belonging to either of the following classes, who has resided in this state six months next preceding any election, shall be entitled to vote at such election in the election district of which he shall at the time have been for thirty days a resident, for all officers that now are, or hereafter may be, elective by the people."

The claim is that the charter provision restricts or hampers the elector in his constitutional right to vote for all officers that are to be elected. We cannot so hold. At the outset we may observe that the canvassing board and the trial court rejected votes properly marked for commissioners for the short term, on the ground that the voter failed to mark two first choice votes for commissioner for the long term. It may be questionable whether the charter provisions quoted authorized this. But the votes that were rejected on this ground would not affect the result of the election. The result is not affected, unless it be held that the canvassing board and the trial court improperly rejected votes for commissioners for the short term which were marked with only one first choice for the short term, and the one question we decide is that the charter provision, in so far as it requires this, is not unconstitutional.

It is undoubtedly true that neither the state legislature nor any other legislative authority can either restrict or extend the right of suffrage or impose conditions which shall in any substantial manner impede its exercise. State v. Erickson, 119 Minn. 152, 137 N. W. 385. It is equally true, however, that the exercise of the right of suffrage may be regulated by legislation. It has for years been regulated in many ways. Men do not have the right to vote in what manner they please. The legislature may prescribe the day and hours of election, and may deny any voter the right to vote unless he be present at such time. It may require the voter to register in advance of the election and deny him the right to vote unless he do so. It may prescribe the character of the ballot used and the manner in which the voter shall indicate his choice. It may require him to vote by means of a voting machine and deny him the right to vote

in any other manner. It may render his ballot void if he vote for too many candidates, though he vote for one and against the other of the two regular or highest candidates.

Regulations not dissimilar in principle to the one here involved have been applied for years, both by the Constitution and the statutes of this state.

Under our state Constitution when constitutional amendments are submitted to a vote at any general election, they must receive the votes of a majority of all the electors voting at such election. If the elector does not register his vote upon this proposition by marking his ballot, his vote nevertheless counts in the negative. The result is that every elector must, in effect, vote either for or against every constitutional amendment or refrain from voting at all. The constitution applies the same principle when any law to increase the gross earnings tax upon railroads is to be voted upon at a general election, (Const. art. 4, § 32a) ; also when, in cities, a proposed city charter or an amendment to a charter is to be voted on at a general election, (Const. art. 4, § 36) ; also in counties when a proposition to change a county seat is to be voted on at a general election (Const. art. 11, § 1.)

The legislature applies the same principle where the question of license or no license in villages (State v. Village Council of Osakis, 112 Minn. 365, 128 N. W. 295) or of the issuance of school bonds by school districts (State v. Brown, 97 Minn. 402, 106 N. W. 477, 5 L.R.A.(N.S.) 327), is to be voted upon at a general election. The voter must have his vote cast in the scale on these questions or not vote at all. The validity of laws of this character has never been questioned.

In Bott v. Wurts, 62 N. J. L. 107, 40 Atl. 740, it was held by the supreme court of New Jersey that where several constitutional amendments were to be voted upon, a form of ballot which required a voter to vote one way or the other on all the amendments did not contravene the requirement of the Constitution that such amendments should be "submitted in such manner and form that the people may vote for or against each amendment separately and distinctly." The court [at page 126] said: "The constitutional provision in itself

gave no consideration for the qualified voter, who for any reason was indifferent or noncommittal." This case was affirmed on other grounds in 63 N. J. L. 289, 43 Atl. 744, 881.

Of course these precedents are not decisive of the questions here involved. But they bear witness to the fact that forms of regulation quite as restrictive as the regulations here found are of common acceptation. The particular plan adopted by the Duluth charter is new. But its novelty alone should not condemn it. It view of past experience in the government of American cities, the people of Duluth may be pardoned for attempting something new. It is a matter of common knowledge that under the system generally prevailing, where two or more persons are to be elected to any office, some voters may and do seek to give an advantage to the candidate of their choice by casting a vote for him and none other. The practice redounds to the benefit of the individual candidate rather than to the public good. The theory of the nonpartisan system is that, under its operation, the voter will cast his vote uninfluenced by the partisan considerations which in local affairs have too often militated against good government. It may well be that if the practice is permitted of casting a single vote for a single candidate for an office to which two or more are to be elected, combinations of voters, actuated by partisan, selfish, or other improper motives, may in this manner gain a certain advantage. The people of the city of Duluth, pursuant to the authority granted to them by the Constitution and laws of the state, adopted this charter for their own local government at a popular election, by a vote of at least four-sevenths of the electors voting. They saw fit to make a rule, which in their local elections should prohibit this practice, doubtless in the expectation that if every elector who votes for any candidate for an office where more than one is to be elected is compelled to cast as many votes as there are officers to be elected, a better composite expression of the judgment of the electorate will be attained. With the wisdom of these charter provisions we have no concern. They emanate from the authority having power to legislate generally as to such matters. They are the law unless they run contrary to some higher law. The state Constitution is such a higher law. But we must bear in mind that, as far as power of legislation

is concerned, the state Constitution is an instrument of limitation, not of grant. We need not search in it for authority for this legislation. We need look in it only for prohibitions. No constitutional authority to legislate upon this subject is required. The power of the legislative authority to legislate is plenary, unless the Constitution has deprived it of that power. Lommen v. Minneapolis Gaslight Co. 65 Minn. 196, 207, 68 N. W. 53, 33 L.R.A. 437, 60 Am. St. 450; State v. City of Mankato, 117 Minn. 458, 136 N. W. 264, 41 L.R.A.(N.S.) 111.

Legislative enactments are not to be lightly put aside by the courts. In Ogden v. Saunders, 12 Wheat. 213, 270, the supreme court of the United States, speaking through Washington, J., said: "It is but a decent respect to the wisdom, the integrity and the patriotism of the legislative body by which any law is passed, to presume in favor of its validity, until its violation of the Constitution is proved beyond all reasonable doubt." This rule has always obtained in this state. Curryer v. Merrill, 25 Minn. 1, 4, 33 Am. Rep. 450; Lommen v. Minneapolis Gaslight Co. 65 Minn. 196, 208, 68 N. W. 53, 33 L.R.A.(N.S.) 437, 60 Am. St. 450.

The Constitution was adopted in 1857. This is not a long time ago, and yet political and social conditions have materially changed. The Constitution contemplated changing conditions. Necessarily new devices that are in conflict with the Constitution are forbidden, but the Constitution must not be narrowly construed. It must be broadly construed with a view to adapt it to the changed and changing conditions, which its framers knew must arise, and in order that it may accomplish the purpose for which it was adopted, to furnish a working rule of legislative conduct for generations yet to come.

Approaching this question in the light of these principles, we cannot hold that this charter provision abridges the right of the elector "to vote * * * for all officers * * * elective by the people." The charter does not command the elector not to vote. It enjoins him to vote. No clause in the Constitution guarantees him the right not to vote. It is his duty as a citizen to exercise his franchise to the full. No citizen has any constitutional right to perform half his public duty by voting for only half the number of candidates to be

elected to any office, and a law that requires him to perform his full public duty and vote for all he may, as a condition to voting for any, is not an unwarranted restriction of his right to vote "for all officers" to be elected. The decision in Adams v. Lansdon, 18 Idaho, 483, 110 Pac. 280, while not directly in point, tends to sustain these views.

2. It is contended that this charter provision is an unwarranted limitation upon the right of the voter to vote for whom he pleases, because, it is urged, he cannot vote for one whose name is not printed on the ballot, and there may not be two candidates for commissioner for whom he can consistently vote, and that as a result he may be put to the alternative of voting against his conscience, or not at all. In our opinion, the voter is not, under this charter provision, so limited. The general election law, G. S. 1913, § 460, definitely confers upon the voter the power to write upon the ballot, and to vote for, persons other than the regularly nominated candidates whose names are printed thereon, and section 327 provides for a blank line for such purpose. The Duluth charter, section 47, adopts the general election laws of the state, "except as otherwise provided in this charter." We have examined the charter with care, and we find in it nothing which abrogates the above provisions of the general law, and we hold these provisions still in force in the city of Duluth. See State v. Ure, 91 Neb. 31, 135 N. W. 224; Park v. Rives, 40 Utah, 47, 119 Pac. 1034.

Judgment affirmed.

BROWN, C. J. (dissenting.)

I am unable to concur in the views of the court in this case and therefore respectfully dissent. The question involved is of far greater and more serious importance than whether the contestant or contestee shall hold and discharge the duties of the office of Commissioner of Public Safety of the city of Duluth. The constitutional right of the electors of the state freely and without restraint to cast their ballots for candidates of their choice, and to have them counted as cast, is the fundamental issue presented, is of far reaching importance for future guidance of legislation along the line of the Duluth charter, and entirely overshadows all other considerations.

The facts are fully stated in the opinion and need not be repeated. That the provisions of the Duluth charter violate the constitutional rights of the electors of that city seems clear and beyond serious dis·cussion. The Constitution (section 1, article 7) provides that every citizen meeting the requirements there prescribed "shall be entitled to vote * * * for all officers that now are, or hereafter may be, elective by the people." This is an express guaranty of a right or privilege which cannot be denied, or substantially impaired or abridged by legislation. It is a civil privilege protected by the fundamental law, to be exercised by the elector, or not, at his option, and in no sense a legal duty imposed by law. It is a duty in the sense that it is a personal obligation the citizen owes to the state and to society, but it has never been declared by court or legislature an imposed legal duty which the elector must perform either in whole or in part. And it may safely be said that, prior to the adoption of the Duluth charter, no legislative authority has ever attempted to declare that an elector must cast his ballot for a particular number of candidates or not vote at all. Under the Constitution the right of franchise must be free and untrammeled to the end that the elector may freely cast his ballot for such candidates as he deems worthy of election, and that he is here deprived of that right is clear. If the decision in this case affirming the validity of this requirement is followed and applied in the future, there is no limit to which the legislature may not go in restricting and substantially embarrassing the right of franchise. It may say, as does the Duluth charter, that if the elector casts his ballot for a less number of candidates than are to be elected to a particular office, the ballot shall be void. It may command the elector to vote the entire ballot, or be deprived of the right to vote for any of the candidates appearing thereon, and if he fails to do so that the ballot cast by him for some of the candidates shall be void. The legislature may also say and declare that if several constitutional amendments are to be voted upon each elector shall cast his ballot upon all, one way or the other, or not at all. In my opinion the legislature has no such power, and any statute so providing would be a nullity. As I understand the facts in Bott v.

Wurts, 62 N. J. L. 107, 40 Atl. 740, cited in the opinion of the court, the decision there rendered does not uphold any such legislative power. In the case at bar two commissioners were to be elected. There were 8 or 10 candidates whose names appeared upon the official ballot. Several ballots were cast for contestant only, and by force of the Duluth charter, the validity of which is affirmed by this court, the ballots so cast are thrown out, resulting in a declaration that a candidate who received the minority vote at the election is declared elected to the office. If this does not deny the right of the elector to vote for candidates of his choice, ignoring those to whom he is opposed, it is difficult to imagine a statute that would have that effect. While it is true, as remarked in the opinion of the court, that statutes are not to be lightly set aside, it is equally true that the right of franchise, standing as it does at the foundation of our free institutions, is just as sacred as the right of the legislature to enact laws. Its protection is safe-guarded by the Constitution, and is beyond legislative impairment. The suggestion in the opinion that one of the purposes of this provision of the Duluth charter was to prevent combinations of voters in favor of one candidate is without force. If combinations of this kind are formed, the purposes thereof can readily be carried out by voting for the preferred candidate alone, and then writing into the ballot the name of some person, not a candidate at all, and marking the cross opposite his name, thus wholly circumventing the intention of the charter, by the exercise of a right the opinion concedes to each elector. The result intended to be guarded against may be accomplished by this idle ceremony.

In my opinion the charter of Duluth upon this subject arbitrarily violates the rights of the electors and should be declared void.

Mr. Justice Philip E. Brown concurs in this dissent.