## J. FREDERICK ORPEN, PROSECUTOR, v. JOHN WATSON, CITY CLERK ET AL., RESPONDENTS.

Argued April 17, 1915—Decided April 21, 1915.

1. The governmental powers of a municipality were vested in five commissioners to be elected by the people, and the statute required each voter to express on his ballot a first choice for each office to be filled under penalty of having the ballot declared void if this requirement was not observed. *Held*, that this requirement was not in contravention of paragraph 1, article 11, of the constitution, which declares that every citizen shall be entitled to vote for all officers elective by the people.

2. The same statute also allowed each voter to express a second, third and fourth choice, which were to be added in their order to the first choice and other choices, to the extent necessary to ascertain which of the five commissioners had received a majority of all the votes cast, but one choice to be expressed for any one person. *Held*, that this method of ascertaining a majority of all the votes cast did not infringe upon an implied constitutional prohibition against voting for more than one candidate for the same office, for by no possibility could a voter cast more than one effective vote for the same person for the same office.

On *certiorari*.

The city of New Brunswick, by popular vote, adopted the act entitled, as amended in 1912 (*Pamph. L., p.* 643), "An act relating to, regulating and providing, for the government of cities, towns, townships, boroughs, villages and municipalities governed by boards of commissioners or improvement commissioners in this state." This statute vests all governmental powers delegated to any of the designated municipalities which may accept the statute by popular vote, in a single board of commissioners to consist of five persons where its population is ten thousand or more, and of three where the population is less than that amount. In New Brunswick, the population exceeds ten thousand, and therefore the governing board must consist of five commissioners, which the statute requires shall be elected by popular vote. By a supplement to this act, passed in 1914 (*Pamph. L., p.* 170), the commission-

ers are to be selected according to the following method: Any qualified elector may become a candidate by filing with the city clerk a petition in accordance with the provisions of the statute, and the clerk is thereupon required to furnish an official ballot, to be used at the election, which shall contain the names of. all the petitioning candidates, so arranged that the voter may vote a first, second, third or fourth' choice. The statute then provides that the voter shall vote as many first choices as there are offices to be filled, or the vote will be' void; that voting any other choice is not compulsory; that only one choice may be expressed for any one candidate; that the voter may write on the ballot the name of any person for whom he may wish to vote, and that a majority of all legal votes cast shall be necessary to an election.

In canvassing the votes, if it appear that the first choice votes for any person exceed a majority of the votes lawfully cast, such person shall be elected without reference to any of the other choices, but if the first choice votes for any person fall short of a majority, then recourse shall be had to the second choice votes, and if they, added to the first choice votes for any person, constitute a majority of the whole, such person shall be elected, and if this shall not be sufficient to elect, that the other choices shall be counted in like manner.

An election for five commissioners was held in New Brunswick, and as none received the required majority of the first choice votes, other choices were canvassed in the manner indicated by the statute, and the city clerk determined that five persons were elected, whereupon the prosecutor, who will be deprived of an office which he now holds under the present city government if. this determination of the result of the election is lawful, applied for and was allowed a writ of *certiorari* to review the authority of the city clerk to make such determination.

The regularity of this method of review is not questioned by the defendants named in the writ, who are the city clerk and the persons declared by the clerk to have been elected.

Before a single justice under the statute.

For the prosecutors, *Theodore Strong* and *Elmer W. Demarest.*

For the defendants, *Thomas H. Hagerty, Daniel J. Murray, William D. Edwards* and *Gilbert Collins.*

The opinion of the court was delivered by

BERGEN, J. The principal reason urged in support of this writ is, that the statute under which the election was held is in violation of paragraph 1, article 11, of the constitution of the state, which provides that "Every male citizen of the United States of the age of twenty-one years, who shall have been a resident of this state one year, and of the county in which he claims his vote for five months, next before the election, shall be entitled to vote for all officers that now are, or hereafter may be, elective by the people."

The first ground urged is, that the statute does not permit a free choice because it compels the voter to vote a first choice for each office to be filled, which in the present case is five, to make his vote effective, when he may desire to vote for only one commissioner, and therefore his right to vote is restricted.

My understanding is that the right of suffrage in organized society is not absolute or inherent, and that the majority of the persons constituting the society may regulate that question as they deem best, except as limited by some organic compact such as the constitution of our state. So, it would seem, that on this branch of the case the simple question is, whether the legislature deeming it wise that some of the powers of the state shall be entrusted to five commissioners, it can provide that each citizen, if he desires to participate in the selection of such instrumentalities of the state, shall vote for the entire number of officers necessary to exercise, for the common welfare, the delegated powers, and if so, whether such requirement infringes upon his constitutional right to vote for all officers that are elective. I think it must be conceded that, if there be no constitutional limitation, the legislature could condition the right to vote for a class of officers upon a requirement to vote for all, and my opinion is, that

the right reserved in the constitution to a vote for all elective officers is not restricted by a requirement that he shall vote for as many persons as there are offices necessary to be filled in order to carry on the government. It is not to vote for particular persons, that choice is left open, but to aid in filling elective offices; it is a regulation of the method of voting for all elective officers.

The argument that in voting for only one, the voter thereby advances the chances of one person whom he may prefer to the others, does not take into account that the constitution reserves no such privilege, either expressly or by implication, nor does it secure him the right not to vote, for as was said by former Chief Justice Depue, in *Bott* v. *Secretary of State,* 62 *N. J. L.* 107: "The constitutional provision in itself gave no consideration for the qualified voter who, for any reason, was indifferent or non-committal with respect to proposed amendments."

The views I have expressed have the support of the Supreme Court of Minnesota, where the precise question now presented was carefully considered and the constitutionality of a statute sustained, by the terms of which voters were required to vote a first choice for as many persons as there were commissioners to be elected, the constitution of the state concerning the right of suffrage being substantially the same as ours. *Farrell* v. *Hicken,* 125 *Minn.* 407; 147 *N. W. Rep.* 815. I think it is clear that no constitutional right of any voter has been restricted, infringed upon or hampered by the requirement that he must, in order to have his vote counted, vote his first choice for as many persons as there are offices to be filled in the manner required by the statute assailed.

The next point made is, that by permitting a voter to express a second and other choices, he has been allowed to vote for more persons than there were offices to be filled, and that this is contrary to an implied prohibition by the constitution against voting for more than one person for the same office. It is argued, that while the organic law does not expressly prohibit a citizen from voting for more than one person for the same office, he is impliedly forbidden, for he is only en-

titled to vote for "all officers" elective by the people, and this must mean one officer for each position to be filled, and not innumerable officers for a single position.

Assuming this to be sound, the question remains to be decided, Does this statute authorize a citizen to vote for more than one person for each office?

The manifest purpose of the act is to ascertain the preferences of a majority of all the voters participating in any such election and to give effect to that preference rather than to determine the result by a plurality vote. The court cannot pass upon the policy of such legislation; all we have to settle is its legal or constitutional standing. The conclusion I have arrived at is, that as it is only the choice votes which go to make a majority that are counted as effective votes, and as no voter can vote for the same person but once in expressing his different choices, he can in no way cast more than one vote which can be counted for each office to be filled, because none of his other choice votes enter into or influence the result. If the person for whom he votes as his first choice has a majority of that class of votes, and recourse is not had to the second choice votes, no second choice vote of his has any effect, and so if his second choice votes enter into the majority, all of his first choice votes are void so far as they affect any result. It is perfectly clear, that under this method of canvassing votes to ascertain where the majority rests, the ballot of any voter can only be counted once for any one candidate. Therefore, the voter has not cast a vote for two persons for the same office in violation of any implied prohibition of the constitution on this subject.

The next point raised is that provision (*e*) of section 4 of the statute provides, that if there be a tie between two or more candidates, it shall be decided in favor of the one having the highest number of first choice votes, and if the number of votes remain equal after applying the other choice votes, then the tie shall be determined by lot, under the direction of the city clerk. This, it is urged, is in violation of the constitutional prohibition against gambling, but I do not feel called upon to decide this question for two reasons, for

if it is contrary to the constitution, it can be eliminated without destroying the scheme and purpose of the act, and also because no such condition exists in this case, and I ought not, in a *certiorari* proceeding, set aside a popular election for a reason that in no way affected the result.

There was another reason urged, namely, that the ballot was not printed with sufficient space below the printed names of the candidates wherein the voter might write the name of any person for whom he might wish to vote. No proof was submitted other than a copy of the ballot, and whether there was sufficient space between each of the names is a question of fact to be determined by observation. I am inclined to think a sufficient space was left, and whether so or not, there were at the bottom of the ballots several spaces with lines and spaces for marking, but I consider this of no substantial importance, for it is not shown that any voter was hampered or embarrassed in voting, and therefore this reason is merely technical and furnished no ground for setting aside the determination by the clerk of the result of an election in which a substantial part of the electorate of the city took part without complaint then, or now, so far as the proofs show.

The next point raised is, that the act of 1914 is unconstitutional, because its title is defective. The basis of this claim is that the title purports to be a supplement to an act entitled, in the words of the title of the act of 1911, when that title was altered in 1912. *Pamph. L., p.* 643. It was not argued that the title of the supplement does not constitutionally express its object, the only contention being that the title of a supplement to an act should correspond with the true title as amended. It seems to me that this objection has been disposed of contrary to the prosecutor's insistence by the Court of Errors and Appeals in *Schmalz* v. *Wooley,* 57 *N. J. Eq.* 303; *American Surety Co.* v. *Great White Spirit Co.,* 58 *Id.* 526.

The conclusion I have reached is, that the statute assailed does not violate the right of suffrage reserved by paragraph 1, article 11, of the constitution, and that the writ should be dismissed, with costs.